IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 10, 2026

**STATE OF TENNESSEE v. PATRICK GARDNER FORD**

**Appeal from the Circuit Court for Rutherford County**
**No. 89843     Barry R. Tidwell, Judge**

_____

**No. M2025-00301-CCA-R3-CD**

_____

The Defendant, Patrick Gardner Ford, petitioned the trial court to enter a guilty plea to one count of unlawful possession of a firearm by a person convicted of a felony crime of violence, a Class B felony. See Tenn. Code Ann. § 39-17-1307(b)(1) (Supp. 2022). Pursuant to the plea agreement, the Defendant was to be sentenced as a Range I, standard offender to eight years in confinement. However, the State conditioned this agreement on the Defendant's appearance at a later court date and his good behavior up to this court date; the State also informed the Defendant that his failure to fulfill these conditions would subject him to a sentencing hearing and the imposition of a sentence in his required sentencing range. When the Defendant failed to appear at this later hearing, the trial court conducted a full sentencing hearing, ultimately sentencing the Defendant as a Range II, multiple offender to twelve years in confinement for his conviction offense. On appeal, the Defendant argues the trial court abused its discretion in denying his request for an alternative sentence, specifically a sentence through the community corrections program. After review, we affirm the judgment of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and MATTHEW J. WILSON, J., joined.

M. Todd Ridley, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Brennan M. Foy, Assistant District Public Defender (at trial), for the appellant, Patrick Gardner Ford.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Jennings H. Jones, District Attorney General; and Brent L. Pierce, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's conviction at issue resulted from his criminal conduct on September 27, 2022, when a Rutherford County sheriff's deputy stopped him for speeding on Old Nashville Highway. When the deputy approached the Defendant's car, he detected the smell of marijuana coming from the vehicle. The Defendant later admitted that he had smoked marijuana prior to driving that day and that he had marijuana in his vehicle. A search of the Defendant's car revealed 92 grams of marijuana and a loaded Ruger .380 caliber handgun with a five-round magazine.

The Defendant was subsequently indicted by the Rutherford County Grand Jury on five charges stemming from this traffic stop: one count of unlawful possession of a firearm by a person convicted of a felony crime of violence (Count 1), unlawful possession of a firearm by a person convicted of a felony drug offense (Count 2), unlawful possession of marijuana (Count 3), unlawful possession of a firearm during the commission of or attempt to commit a dangerous felony (Count 4), and unlawful possession of drug paraphernalia (Count 5).

On May 22, 2024, the Defendant petitioned the trial court to enter a guilty plea to Count 1, charging him with unlawful possession of a firearm by a person convicted of a felony crime of violence. As a part of the plea agreement, the State agreed for the Defendant to be sentenced as a Range I, standard offender to eight years' confinement with a release eligibility of eighty-five percent rather than at his higher sentencing range. The State specified that if the Defendant received any new charges or failed to appear at court on July 3, 2024, then it would request a presentence report, proceed with a full sentencing hearing on the conviction offense, and seek a sentence for the Defendant in his higher sentencing range. In addition, the trial court outlined the Defendant's potential sentence exposure if he violated the plea agreement. The court then ordered the Defendant to return to court on July 3, 2024, at which time the court would accept the Defendant's guilty plea pursuant to this plea agreement so long as he fulfilled the conditions of the agreement. Thereafter, the Defendant failed to appear at the July 3, 2024 hearing.

At the ensuing February 7, 2025 sentencing hearing, the State admitted an amended presentence report as well as certified judgments for the Defendant's 2008 conviction for possession of Schedule VI drug, a Class C felony; his 2008 conviction for maintaining a dwelling for drug use, a Class D felony; his 2008 conviction for unlawful possession of a weapon, a Class E felony; his 2015 conviction for aggravated assault, a Class C felony; and his 2015 conviction for possession of a Schedule VI drug, a Class E felony. The State also admitted the Defendant's 2010 violation of probation order and presented testimony from the arresting deputy concerning the facts surrounding the Defendant's traffic stop. The defense admitted a letter showing the Defendant's

acceptance for treatment at The Lazarus Project of Knoxville, a substance abuse rehabilitation center.

The Defendant presented testimony from his seventeen-year-old daughter, Madison Ford. Ms. Ford testified that she had given birth to her own daughter, the Defendant's granddaughter, on July 12, 2024. She stated that although her father was addicted to drugs and alcohol, he had always made sure that she and her sister had everything they needed. She asked the trial court to allow her father to receive treatment for his drug and alcohol addictions so he could be there for his daughters, his granddaughter, and his mother.

The Defendant, age thirty-nine, testified on his own behalf. He stated that his past employment included pressure-washing, painting, and carpentry and that he knew many individuals with their own businesses who would hire him. He also said that he had completed his GED (General Education Development). The Defendant admitted to all his prior convictions presented by the State. He stated that he was only twenty-one or twenty-two years old when he was convicted of his 2008 felonies and that his most recent conviction was in 2015 for the aggravated assault of his wife. The Defendant affirmed that he had not received any convictions in the last ten years. Although he admitted that he violated his probation in 2010 and in 2017, he asserted that he went on to complete his probation. The Defendant acknowledged that he needed "to pull it together" in order to be the father and grandfather he wanted to be.

The Defendant claimed that he failed to appear at the July 3, 2024 court date, a condition of his plea agreement, because of his daughter's advanced pregnancy and the impending birth of his granddaughter. He stated that he wanted to be present for the birth of his granddaughter but conceded that it was not his "best decision."

The Defendant admitted he had a long history of drug and alcohol addiction. He confessed to drinking six to twelve beers a day for the last twenty years and admitted that the only time he "slowed down or considered stopping" was when he was "incarcerated." He acknowledged that he first used drugs at age fifteen or sixteen and consistently used marijuana, cocaine, and opiates, which had a "detrimental" impact on him and his family. He admitted he began using cocaine at age seventeen and last used cocaine on the day of his arrest in this case.

The Defendant asked the trial court to impose "rehabilitation" rather than "incarceration" and reiterated that he had been accepted into the Lazarus Project, a one-year residential rehabilitation program in Knoxville. He specifically requested that the trial court place him on community corrections and list as a condition of his sentence that he complete the one-year Lazarus Project for rehabilitation. He recognized that a

- 3 -

community corrections sentence was demanding and that if the trial court granted his request, he would spend a long time on community corrections after completing the one-year of treatment at the Lazarus Project. The Defendant identified three family members and several friends who were present in the courtroom to support him.

On cross-examination, the Defendant claimed that he had never "asked for or been offered [substance abuse] treatment" on his prior convictions. When asked why he believed he was entitled to another chance to avoid incarceration, the Defendant replied, "I deserve a chance to go to [a] treatment or rehab facility, just like anybody else with an addiction problem deserves to go to a treatment or rehab facility. I'm not any different than anybody else."

The Defendant admitted that within the last six months he had bought and sold drugs and had used the proceeds from these drug transactions to buy drugs and alcohol for his personal use. He also admitted he was unemployed at the time of his arrest.

The Defendant also admitted that, after the birth of his granddaughter, he had been staying at a friend's home when a bondsman arrived to take him into custody with an active warrant. He said that although his friend initially denied the Defendant's presence at his home the bondsman gained entry with the warrant and ultimately found him hiding in the home's attic.

The Defendant acknowledged that he had received probation in the past for his criminal convictions. He conceded that although he had been given resources for rehabilitation and therapy, he had not taken advantage of these resources.

On redirect examination, the Defendant admitted that he had sold drugs the day he was arrested and that he had a gun and drugs in his car at that time. He claimed his life had significantly changed with the birth of his granddaughter.

After hearing the parties' arguments, the trial court stated that it had considered the evidence from the plea submission hearing and the sentencing hearing, the presentence report, the principles of sentencing, the arguments regarding sentencing alternatives, the nature and characteristics of the criminal conduct involved, the evidence offered regarding mitigating and enhancement factors, the statistical information provided by the Administrative Office of the Courts regarding sentencing practices for similar offenses in Tennessee, the testimony of the Defendant, and the Defendant's potential for rehabilitation and treatment. See Tenn. Code Ann. § 40-35-210(b).

The trial court determined that the Defendant was a Range II, multiple offender based on his previous convictions. See id. § 40-35-106. The court then applied two

enhancement factors. He applied factor (1) because the Defendant had a "previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range" and factor (8) because the Defendant "before trial or sentencing, failed to comply with conditions of his sentence involving release into the community[.]" See id. §§ 40-35-114(1), (8) (Supp. 2022). The court considered mitigating factor (1), that the Defendant's "criminal conduct neither caused nor threatened serious bodily injury[,]" but gave it "very little to no weight" because the Defendant was "selling drugs" and "had a firearm on him after knowing . . . that as a convicted felon, he was not to have a firearm." See id. § 40-35-113(1). In addition, the trial court considered mitigating factor (13), the "catch-all factor," in light of the testimony from the Defendant's daughter, who "had a baby in the last six[] months." The court gave factor (13) "some weight but very little" because it had no way of knowing if the Defendant was "truly sincere" in his claim that he had "changed." See id. § 40-35-113(13).

The trial court recognized that the Defendant had previously violated his probation. It also noted that when the Defendant "failed to show up in court, last summer, [a] capias was issued, a new court date was set, [and the Defendant] failed to show up for that new court date." The court stated that "three days after that court date, [the Defendant] was found hiding in an attic and had to be brought into custody by his bondsman."

The trial court determined that the Defendant was not eligible for probation because he was a Range II, multiple offender with a sentencing range of twelve to twenty years. See id. § 40-35-303(a) (Supp. 2022). The trial court also found that the Defendant was not a favorable candidate for alternative sentencing because he had been convicted of a Class B felony. See id. § 40-35-102(6)(A).

Regarding the Defendant's request to receive a community corrections sentence, the trial court found that the Defendant did not meet the minimum criteria to be considered for community corrections under Code section 40-36-106(a)(1) because he had been convicted of offenses in which the "use or possession of a weapon" was involved and because the Defendant's previous conviction for aggravated assault demonstrated a "present or past pattern of behavior[] indicating violence" and "a pattern of committing violent offenses." See id. §§ 40-36-106(a)(1)(D), (E), (F) (Supp. 2022).

The court then considered whether to give the Defendant a community corrections sentence under the "special needs" provision in Code section 40-36-106(c) (Supp. 2022). The court asserted, "Not once did I hear anyone say that despite having these [addiction] issues that [the Defendant] sought out treatment, sought out help, asked anyone to help him beat this [drug and alcohol addiction]." It then added, "And yet, once again, [we] [have] a defendant who relies on the courts to provide something that he, himself, could have sought out, but he simply did not."

The trial court determined that the appropriate sentence length for the Defendant was twelve years, which was the "bottom of the range," but noted that it could have sentenced the Defendant to "much higher." Regarding the manner of service of this sentence, the trial court observed that the Defendant "had a lifetime of convictions, a lifetime of being in the [judicial] system, a lifetime of probation, going to prison, and yet, despite his . . . claims that the courts ha[ve] never helped him, he's never helped himself." Consequently, the trial court ordered the Defendant's twelve-year sentence "be served in the Department of Correction." The court then made the following additional findings:

> The Court does not have any faith, whatsoever, that [the Defendant] would do well on Community Corrections. His actions leading up to the sentencing in this case bear that out if nothing else, when he had an opportunity to come to court on charges, receive a much, much lower sentence. I would note, [the Defendant] made a decision that has led him to [this result]. And so, that's the appropriate sentence.

Following entry of the judgment for the firearm conviction as well as the judgments dismissing the remaining charges, the Defendant timely filed a notice of appeal.

## ANALYSIS

The Defendant argues on appeal that the trial court erred in denying his request for an alternative sentence, specifically a community corrections sentence and treatment at a rehabilitation facility. He claims that although he was a Range II, multiple offender, the evidence at the sentencing hearing established that the needs of the community, the Defendant, and the Defendant's family would be better served by a community corrections sentence to address his addiction issues, rather than the twelve years of incarceration he ultimately received. The State responds that the trial court acted within its discretion in denying the Defendant an alternative sentence, including a sentence through the community corrections program. We agree with the State.

The 2005 amendments to the sentencing act "served to increase the discretionary authority of trial courts in sentencing." State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Accordingly, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. This abuse of discretion standard of review, accompanied by a presumption of reasonableness, also applies to a trial court's decision regarding "probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Pursuant to the 2005 amendments to the sentencing act, a trial court must consider the following when determining whether to impose an alternative sentence:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and
(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d), Sentencing Comm'n Comments. In determining the proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. Id. §§ 40-35-102(3)(C), -103(5). In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). Tenn. Code Ann. § 40-35-102(6)(D). Here, the Defendant was not considered a favorable candidate for alternative sentencing because he was a Range II, multiple offender and because he was convicted of a Class B felony. See id. 40-35-102(6)(A).

A trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn.

Crim. App. 1996).  The defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing.  Id. (citing Tenn. Code Ann. § 40-35-303(b)).  A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute.  Tenn. Code Ann. § 40-35-303(a).  Here, the Defendant was ineligible for probation because his sentence exceeded ten years.  See id.

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A)    Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B)    Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C)    Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Tennessee Code Annotated section 40-35-102(5) gives courts guidance regarding the types of defendants who should be required to serve their sentences in confinement:

In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

The Defendant argues that the trial court abused its discretion in denying his request for a community corrections sentence.  While acknowledging that he has some criminal history, he claims his history is not "long" under Code section 40-35-103(1)(A), asserting that much of his prior criminal history predated his conviction in this case by several years. See Tenn. Code Ann. § 40-35-103(1)(A).  The Defendant also contends that his conviction offense in this case was not "particularly egregious."  See id. § 40-35-103(1)(B).  He asserts that although his traffic stop yielded marijuana and a handgun, the incident did not involve violence or a third party.  In addition, the Defendant notes that although he received alternative sentences in the past, those alternative sentences had not been applied "frequently or recently."  See id. § 40-35-103(1)(C).  He asserts that he was placed on probation twice in the past and that although he violated his probationary sentence in 2010, he ultimately completed this probationary sentence without issue.  The Defendant insists

that the State and the trial court were less concerned with his criminal history than his failure to appear at the July 2024 sentencing hearing and argues that his decision to spend time with his daughter and newborn granddaughter "should not be the basis for enhancing [his] sentence from the previously agreed eight years as Range I to the imposed sentence of twelve years as Range II."

A defendant who is ineligible for probation may still be a candidate for a community corrections sentence.  See id. § 40-36-106(a)(1); State v. Kendrick, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999).  A purpose of the Community Corrections Act of 1985 was to "[e]stablish a mechanism for using state funds to contract with local governments and qualified private entities to develop community-based alternatives to incarceration that provide a treatment-centered pathway for offenders, thereby reserving state penal institution, local jail, or workhouse bed space for other offenders[.]"  Tenn. Code Ann. § 40-36-103(1) (Supp. 2022).  Eligible offenders under the Community Corrections Act include:

> (A)    Persons who, without this option, would be incarcerated in a correctional institution;
> (B)    Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
> (C)    Persons who are convicted of nonviolent felony offenses;
> (D)    Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
> (E)    Persons who do not demonstrate a present or past pattern of behavior indicating violence; and
> (F)    Persons who do not demonstrate a pattern of committing violent offenses.

Id. § 40-36-106(a)(1)(A)-(F) (Supp. 2022).

Here, the trial court determined that the Defendant was not eligible for community corrections under Code section 40-36-106(a)(1) because he had been convicted of offenses in which the "use or possession of a weapon" was involved and because his previous aggravated assault conviction demonstrated a "present or past pattern of behavior indicating violence" and "a pattern of committing violent offenses."  See id. §§ 40-36-106(a)(1)(D), (E), (F).  The court then considered whether the Defendant could receive a community corrections sentence under the "special needs" provision in Code section 40-36-106(c), which states:

- 9 -

Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under this chapter.

Id. § 40-36-106(c).

In considering the applicability of this "special needs" provision, the trial court noted the absence of proof showing that the Defendant sought treatment for his drug and alcohol addictions. The court also observed that the Defendant had a lengthy criminal history and had received probation several times in the past. It expressed its belief that the Defendant would not "do well" on community corrections and noted that although the Defendant "had an opportunity to come to court on charges, [and] receive a much, much lower sentence," he failed to appear at the required hearing.

We conclude that the trial court acted within its discretion in denying the Defendant a community corrections sentence. The trial court properly determined that the Defendant was not eligible for community corrections under Code section 40-36-106(a)(1). See id. §§ 40-36-106(a)(1)(D), (E), (F). The Defendant was also ineligible for a community correction sentence under the "special needs" provision of Code section 40-36-106(c). Before an offender can be placed on community corrections under Code section 40-36-106(c), the offender must first be statutorily eligible for probation. State v. Johnson, 342 S.W.3d 520, 522-23 (Tenn. Crim. App. 2009); see State v. Cowan, 40 S.W.3d 85, 86 (Tenn. Crim. App. 2000); State v. Kendrick, 10 S.W.3d 650, 655 (Tenn. Crim. App. 1999); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996); State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989). Here, because the Defendant received a twelve-year sentence, he was ineligible for both probation and a community corrections sentence under the "special needs" provision. See id.; Tenn. Code Ann. § 40-35-303(a) (stating, in part, that "[a] defendant is eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less").

We further conclude that the trial court acted within its discretion in denying the Defendant any other type of alternative sentence. The Defendant's criminal history consisted of five felony convictions, multiple misdemeanor convictions, and two probation violations, which places him squarely within the parameters of Tennessee Code Annotated section 40-35-102(5). The record shows that confinement was necessary to protect society from the Defendant "who ha[d] a long history of criminal conduct, that confinement was necessary "to avoid depreciating the seriousness of the offense" or was "particularly suited to provide an effective deterrence to others likely to commit similar

offenses," and that measures less restrictive than confinement "ha[d] frequently or recently been applied unsuccessfully" to the Defendant. Id. § 40-35-103(1)(A)-(C). The Defendant's extensive criminal record, his previous probationary sentences, and his failure to appear in court pursuant to his original plea agreement indicate that he is not amenable to correction. Because the record shows that the trial court carefully considered the purposes and principles of sentencing before imposing a sentence of confinement, the Defendant has failed "to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded" to the court's sentence in this case. Caudle, 388 S.W.3d at 280. Accordingly, we uphold his effective twelve-year sentence in the Tennessee Department of Correction.

## CONCLUSION

The judgment of the trial court is affirmed.

s/ **Camille R. McMullen**

CAMILLE R. MCMULLEN, JUDGE